MICHAEL J. HADDAD (State Bar No. 189114)
JULIA SHERWIN (State Bar No. 189268)
GENEVIEVE K. GUERTIN (State Bar No. 262479)
T. KENNEDY HELM (State Bar No. 282319)
HADDAD & SHERWIN LLP
505 Seventeenth Street
Oakland, California  94612
Telephone: (510) 452-5500
Facsimile:   (510) 452-5510

Attorneys for Plaintiffs James Neuroth
and Joan C. Nygren

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES NEUROTH and JOAN C. NYGREN, Individually and as Co-Successors in Interest of Decedent STEVEN KELLOGG NEUROTH, <br><br> Plaintiffs, <br><br> vs. <br><br> MENDOCINO COUNTY, a public entity; MENDOCINO COUNTY SHERIFF-CORONER THOMAS D. ALLMAN, in his individual and official capacities; CALIFORNIA FORENSIC MEDICAL GROUP, INCORPORATED, a California corporation; TAYLOR FITHIAN, M.D.; JENNIFER L. CAUDILLO, L.V.N., and COUNTY DEPUTIES DOES 1–20, and DOES 21–35, individually, jointly, and severally, <br><br> Defendants. | No: <br><br> **COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL** |

COMPLAINT AND JURY DEMAND

Plaintiffs, by and through their attorneys, HADDAD & SHERWIN LLP, for their Complaint against Defendants, state as follows:

## JURISDICTION

1.     This is a civil rights wrongful death/survival action arising under 42 U.S.C. §§ 1983 and 1988, and the First, Fourth, and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.  Plaintiffs further invoke the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367, to hear and decide claims arising under state law.  The amount in controversy herein, excluding interest and costs, exceeds the minimum jurisdictional limit of this Court.

## INTRADISTRICT ASSIGNMENT

2.     A substantial part of the events and/or omissions complained of herein occurred in the County of Mendocino, California, and this action is properly assigned to the Oakland or San Francisco Division of the United States District Court for the Northern District of California.

## PARTIES AND PROCEDURE

3.     Plaintiff JAMES NEUROTH is the brother of Decedent STEVEN NEUROTH and a resident of the State of California.  Plaintiff JAMES NEUROTH brings these claims individually and as co-successor in interest for Decedent STEVEN NEUROTH pursuant to California Code of Civil Procedure §§ 377.10 et seq.

4.     Plaintiff JOAN C. NYGREN is the sister of Decedent STEVEN NEUROTH and a resident of the State of California.  Plaintiff JOAN C. NYGREN brings these claims individually and as co-successor in interest for Decedent STEVEN NEUROTH pursuant to California Code of Civil Procedure §§ 377.10 et seq.

5.     Plaintiffs bring these claims pursuant to California Code of Civil Procedure §§ 377.20 et seq. and 377.60 et seq., which provide for survival and wrongful death actions.  Plaintiffs also bring their claims individually and on behalf of Decedent STEVEN NEUROTH on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, and federal and state civil rights law.

6.     Defendant COUNTY OF MENDOCINO ("COUNTY") is a public entity and municipal corporation, duly organized and existing under the laws of the State of California.  Under its authority, the COUNTY operates the Mendocino County Sheriff's Department.

7.     Defendant SHERIFF-CORONER THOMAS D. ALLMAN ("ALLMAN"), at all times mentioned herein, was employed by Defendant COUNTY as Sheriff-Coroner for the COUNTY, and he was acting within the course and scope of that employment.   He is being sued individually and in his official capacity as Sheriff-Coroner for the COUNTY.

8.     Defendant COUNTY DEPUTIES DOES 1–20 were each at all times herein mentioned deputy sheriffs employed by Defendant COUNTY, and each was acting within the course and scope of that employment.

9.     In engaging in the conduct described herein, Defendant COUNTY DEPUTIES DOES 1–20 acted under the color of law and in the course and scope of their employment with the COUNTY.

10.     Defendant CALIFORNIA FORENSIC MEDICAL GROUP, INC. ("CFMG"), was at all times herein mentioned, a California corporation licensed to do business in California. Defendant CFMG provided medical and nursing care to prisoners and detainees in Mendocino County jails, pursuant to contract with the COUNTY OF MENDOCINO.  On information and belief, CFMG and its employee and agent Defendant TAYLOR FITHIAN, M.D., are responsible for making and enforcing policies, procedures, and training related to the medical care of prisoners and detainees in Defendant COUNTY OF MENDOCINO's jails, including assessing inmates for mental-health needs.

11.     Defendant TAYLOR FITHIAN, M.D. ("FITHIAN") was at all times herein mentioned a physician licensed to practice medicine in the State of California, an employee and/or agent of Defendant CFMG, working as the medical director of Defendant COUNTY's jails responsible for overseeing and providing medical care to prisoners and detainees, and he was acting within the course and scope of that employment.  On information and belief, Defendant FITHIAN was ultimately responsible for CFMG's provision of medical care to inmates at the jails, including assessing inmates for possible mental-health needs, and all CFMG policies, procedures, and training related thereto.

12.     Defendant JENNIFER CAUDILLO, L.V.N. ("CAUDILLO") was at all times herein mentioned employed by Defendant CFMG as a licensed vocational nurse in Defendant COUNTY OF MENDOCINO's jails, and was acting within the course and scope of that employment.  On information and belief, Defendant CAUDILLO performed the intake medical assessment on Decedent when he was booked into jail, and failed to follow appropriate protocols for assessing, monitoring, and treating Decedent STEVEN NEUROTH, including failing to summon medical care for Decedent STEVEN NEUROTH despite his exhibiting symptoms consistent with having a medical and/or mental-health emergency requiring immediate transfer to a hospital for inpatient emergency treatment.

13.     Plaintiffs are ignorant of the true names and capacities of DEFENDANTS DOES 21 through 35, inclusive, and therefore sue these Defendants by such fictitious names.  Plaintiffs are informed and believe and thereon allege that each Defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiffs as set forth herein.  Plaintiffs will amend their complaint to state the names and capacities of DOES 21–35, inclusive, when they have been ascertained.

14.     Plaintiffs are informed and believe and thereon allege that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship.  Plaintiffs are further informed and believe and thereon allege that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter specifically alleged.  At all material times, each Defendant was jointly engaged in tortious activity and an integral participant in the conduct described herein, resulting in the deprivation of Plaintiffs' constitutional rights and other harm.

15.     The acts and omissions of all DEFENDANTS as set forth herein were at all material times pursuant to the actual customs, policies, practices and procedures of the COUNTY, the Mendocino County Sheriff's Department, and/or CFMG.

16.     At all material times, each Defendant acted under color of the laws, statutes, ordinances, and regulations of the State of California.

17.     Each Plaintiff timely and properly filed tort claims pursuant to California Government Code sections 910 et seq., and this action is timely filed within all applicable statutes of limitation.

18.     This complaint may be pled in the alternative pursuant to Federal Rule of Civil Procedure 8(d).

### GENERAL ALLEGATIONS

19.     Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

20.     STEVEN NEUROTH was a mentally ill man, having been diagnosed with paranoid schizophrenia, schizo-affective disorder, and depression.  When STEVEN NEUROTH died, he was fifty-five years' old; he was about 5'9" tall, and he weighed about 156 lbs.

21.     On or about June 10, 2014, at approximately 10:00 p.m., Willits Police Department Officers Andrade and Leef contacted STEVEN NEUROTH in public, who told them that an unknown person was after him, and that all the traffic in Willits was going to hurt him.  Officers Andrade and Leef arrested him on suspicion that he was under the influence of a controlled substance in violation of California Health & Safety Code § 11550(a).  According to the officers' report(s), STEVEN NEUROTH was "extremely paranoid," "believed someone was out to 'kill him,'" and "was going through a psychosis state."  Once STEVEN NEUROTH was in the officers' patrol car, he told them that there were "snakes" on the patrol-car floor, and "started to scream."  Officers Andrade and Leef transported STEVEN NEUROTH to the Mendocino County jail, where he was booked and held as a pretrial detainee.  At the time of booking, Decedent did not have any apparent physical injuries.

22.     At about 11:40 p.m. on the day of STEVEN NEUROTH'S arrest, on information and belief, Defendant JENNIFER CAUDILLO, L.V.N., and/or DOES 21–35 performed the jail's intake medical assessment on STEVEN NEUROTH.  As a matter of California law, as a Licensed Vocational Nurse, Defendant CAUDILLO was not competent and was not permitted by her license to conduct an intake medical assessment on an inmate, including STEVEN NEUROTH.  According

to the Coroner's Investigator's Report, Defendant CAUDILLO took STEVEN NEUROTH's vital signs.  Defendant CAUDILLO noted that STEVEN NEUROTH's heart beat was 129 beats per minute, which indicated that he was suffering from tachycardia, given that a healthy adult heart normally beats 60–100 times per minute.  Defendant CAUDILLO further noted both that STEVEN NEUROTH's blood pressure was 151/92, whereas normal blood pressure is less than 120/80, and that his respiration rate was 18 breaths per minute, whereas the respiration rate for a normal adult is 12 breaths per minute.  Defendant CAUDILLO noted that STEVEN NEUROTH was "very paranoid."  Defendant CAUDILLO and/or DOES 21–35 had actual knowledge that STEVEN NEUROTH was in extreme medical and psychiatric distress and in need of emergency medical/psychiatric care, and she/they decided not to provide or request such necessary care for STEVEN NEUROTH, and she/they decided not to secure, or request, such necessary treatment for STEVEN NEUROTH in a hospital.

23.     Due to Defendants' refusal to provide Plaintiffs with records and information concerning these events, Plaintiffs currently are unable to more specifically plead facts concerning the conduct of Defendant CAUDILLO's and DOES 21–35 other than that, on information and belief, Defendant CAUDILLO and/or DOES 21–35 knew and/or must have known that STEVEN NEUROTH had serious medical and psychiatric needs requiring emergency treatment, care, and hospitalization, and that with deliberate indifference to such needs, Defendant CAUDILLO and/or DOES 21–35 caused STEVEN NEUROTH to be deprived of such necessary, life-saving medical and psychiatric care.

24.     At approximately midnight on June 10, 2014, while jail staff had actual knowledge that STEVEN NEUROTH was apparently psychotic, paranoid, and suffering from serious medical/psychiatric needs, Defendants were deliberately indifferent to those serious medical/psychiatric needs, and denied STEVEN NEUROTH necessary medical and/or psychiatric care, including necessary emergency care.  Defendants were deliberately indifferent to STEVEN NEUROTH's safety and medical/psychiatric needs in their jail placement and custody decisions.  On information and belief, due to such deliberate indifference, STEVEN NEUROTH's

medical/psychiatric condition deteriorated, and on information and belief, STEVEN NEUROTH became unable to care for himself or to understand and follow the commands and directives of jail personnel.

25.     When STEVEN NEUROTH allegedly acted paranoid and was uncooperative, jail staff including deputies used a high level of injurious force against STEVEN NEUROTH that was sufficient to cause his death.  Among other uses of force, DEFENDANT DOE DEPUTIES 1–20 took STEVEN NEUROTH to the ground using control holds and put restraints on his legs. DEFENDANT DOE DEPUTES 1–20 took STEVEN NEUROTH to Safety Cell #2 where they continued to use excessive and unjustified force against him, including, on information and belief, multiple strikes, blows, and control holds.  STEVEN NEUROTH did not pose an immediate threat to anyone to justify the high level of injurious force used against him in the jail.  Additionally, on information and belief, Respondents subjected STEVEN NEUROTH to improper and excessive restraint, leading to restraint associated asphyxia (or positional asphyxia) and death.  Section 1058 of Title 15 of the California Code of Regulations provides that restraints should not be used as a substitute for treatment.

26.     According to the official Mendocino County autopsy, injuries that DEFENDANTS caused to STEVEN NEUROTH in the jail included:

- Blunt force injuries (contusions, abrasions, avulsions), widespread;
- Fracture, essentially non-displaced, of the left fifth rib at the costochondral junction;
- General visceral passive hyperemia (organ injuries);
- Petechiae, epicardial, focal; and other serious physical injuries.

Due to DEFENDANTS' deliberate indifference to his medical/psychiatric needs, and the excessive and unreasonable force used by COUNTY DEPUTIES DOES 1–20, STEVEN NEUROTH suffered severe injuries, and died on June 11, 2014, at approximately 12:46 a.m.

27.     In addition to the foregoing evidence of the use of unjustified, injurious force on STEVEN NEUROTH, COUNTY DEPUTIES DOES 1–20 also caused further trauma to STEVEN NEUROTH as noted in the autopsy performed by the COUNTY's Office of the Sheriff-Coroner, on

or about June 12, 2014, all evidence of their use of a very high degree of unnecessary force on STEVEN NEUROTH:

- <u>Head and Front Torso</u>
  - o 1" x 0.75" contusion covering the right zygoma (cheekbone);
  - o 2" irregular area of slight contusions on the right lateral clavicular line in the skin overlying the lateral pectoralis muscle;
  - o 0.25" slight abrasion on the mid right rib cage;
  - o 0.5" contusion overlying the right anterior superior iliac spine (pelvis);
  - o 0.75" contusion in a contralateral position to the right anterior superior iliac spine;
  - o 1.5" faint contusion on the abdominal wall;
  - o 1.25" contusion lateral to the left mid clavicular line over the inferior most rib cage;
  - o 0.5" rounded contusion slightly above and to the side of the 1.25" contusion described immediately above;
  - o 0.75" rounded contusion slightly above and to the side of the 1.25" contusion described above;
- <u>Back and Buttocks</u>
  - o 1.375" diagonally oriented linear abrasion near the right mid scapular line at the inferior extent of the rib cage;
  - o 1.5" contusion near the right mid scapular line at the inferior extent of the rib cage;
  - o 0.5" contusion in the skin overlying the mid right scapula;
  - o 0.25" contusion in the skin of the inferior lateral aspect of the right buttock;
- <u>Right Upper Extremity</u>
  - o 1.75" contusion in the proximal portion of the distal third of the right arm;
  - o 1" vertical linear abrasion in the proximal portion of the distal third of the

right arm;

- o 0.5" faint contusion in the ventrolateral mid portion of the right forearm;
- o 1.75" contusion, bearing a 0.5" abrasion and a milder 0.75" abrasion on the ventrolateral aspect of the right distal most forearm;
- o 0.5" minimal abrasion just distal to the junction of approximately the middle and distal thirds of the right forearm ventrolaterally;
- o 2" x 0.75" contusion with a 0.5" horizontal mild abrasion and a 0.125" punctate abrasion on the right hand, overlying the proximal second metacarpal and extending to the wrist;
- o 1" region of irregular punctate abrasions between the right second and third metacarpals just proximal to the metacarpophalangeal joints;
- o 0.75" contusion (lying adjacent to the previously described contusion) on the dorsolateral aspect of the right forearm at the junction of the middle and distal thirds;
- o 0.5" abrasion near the head of the right radius dorsomedially
- o 1.25" area containing three irregular abrasions near the head of the right radius dorsomedially;
- o 1" contusion with dorsally situated abrasions of up to 0.125" on the medial aspect of the right wrist at the base of the thenar eminence;
- o 0.5" abrasion of the dorsal/dorsomedial aspect in the proximal portion of the proximal third of the right arm;
- o 0.375" faint contusion on the medial aspect of the right elbow.

- Left Upper Extremity
  - o 0.375" and 0.25" minimal abrasions on the medial aspect of the proximal most portion of the left arm;
  - o 0.375" region of abrasions just proximal to the olecranon, on the distal most portion of the dorsum of the left arm;

COMPLAINT AND JURY DEMAND                                              8

- o 2" irregular contusion with abrasion, one linear and 1.25" long, on the dorsal aspect of the proximal most left arm;
- o 1" mild contusion on the anterior aspect of the left arm in the mid portion of the distal third;
- o 2.25" contusion, with a slight abrasion, on the lateral aspect of the proximal portion of the distal third of the left forearm, curling about the radius.
- o 0.75" contiguous region of contusion, with mild abrasions, immediately distal to the 2.25" contusion described immediately above;
- o 1" irregular contusion, slightly abraded, on the lateral aspect of the left wrist near the head of the radius;
- o 0.2" by up to 0.75" contusion on the dorsum of the left wrist joint;
- o 0.5" contusion, with slight abrasion, between the proximal-most portions of the proximal phalanges of the left third and fourth fingers.

- • Right Lower Extremity
  - o 1" yellow-brown apparent resolving contusion at the inferomedial aspect of the right patella;
  - o 0.625" irregular region of abrasion on the medial aspect of the right knee;
  - o Discontinuous healing linear abrasion in the distal portion of the proximal third of the anterior aspect of the right leg;
  - o 0.75" region of linear contusion in the distal portion of the distal third of the medial aspect of the right leg;
  - o 1.25" contusion, with mild avulsion of the epidermis not associated with bleeding, overlying the right medial malleolus;
  - o 0.5" irregular abrasion on the anterolateral aspect of the proximal most right leg;

- • Left Lower Extremity
  - o 0.25" area of very minimal punctate abrasions and mild contusions beginning

COMPLAINT AND JURY DEMAND                                                                 9

on the medial aspect of the left knee and extending distally for about 3".

- o   1" slightly diagonal linear abrasion immediately dorsal to the region immediately described;

- o   1.75" region of contusion, with a 0.5" abrasion with minimal avulsions, on the anterior aspect of the left leg in the mid distal third;

- o   0.75" contusion on the superior aspect of the left hallux

- Internal

- o   50 mm region of petechiae in the epicardium of the posterior aspect of the heart.

28.     At this time, Defendants COUNTY and CFMG have not produced records and information that would be responsive to Plaintiffs' proper and legal requests for information concerning these events, and consequently, Plaintiffs are unable to more specifically describe Defendants' identities or conduct at this time.

29.     Defendants COUNTY DEPUTIES DOES 1–20, on information and belief, severely beat, punched, kicked, stomped, and brutalized STEVEN NEUROTH.  Each Defendant deputy used, or caused the use of, extreme and/or deadly force against STEVEN NEUROTH, causing severe injuries and deadly trauma to him, including but not limited to as described above.  On information and belief, at the time Defendants used such force and restraints on STEVEN NEUROTH, as described herein, STEVEN NEUROTH never struck or kicked any deputy, and did not pose an immediate threat to any person.  Decedent STEVEN NEUROTH was suffering from psychosis and was vastly outnumbered by deputies.  Further, STEVEN NEUROTH had been arrested for a non-serious crime, and Defendants failed to use available less-forceful alternatives to the force and restraints used.

30.     Defendants COUNTY DEPUTES DOES 1–20, on information and belief, were integral participants in brutalizing, beating, striking, kicking, applying excessive control holds, and unreasonably restraining Decedent STEVEN NEUROTH, and each was responsible for the totality

of force used in his/her presence.  Further, each of these Defendant deputies failed to intervene to stop, prevent, or report the use of excessive and unreasonable force and restraint by other deputies.

31.    The type and amount of force COUNTY DEPUTIES DOES 1–20 used against STEVEN NEUROTH as described herein, including multiple blows to STEVEN NEUROTH's body, improper control holds, and restriction of STEVEN NEUROTH's airways, neck, and back areas, amounted to the use of deadly force under the circumstances.  The use of deadly force was not justified or lawful under the circumstances.

32.    Alternatively, or concurrently, COUNTY DEPUTIES DOES 1–20s' own excessive, unreasonable, reckless, and provocative actions created a risk of harm to STEVEN NEUROTH, created the situation in which COUNTY DEPUTIES 1–20 used extreme and otherwise unnecessary force, and caused an escalation of events leading to STEVEN NEUROTH's death.

33.    Plaintiffs are informed and believe and thereon allege that asphyxiation of individuals during restraint is well documented and generally accepted such that reasonable law enforcement agencies as a matter of routine train their peace officer personnel in avoiding asphyxiation of individuals during restraint.  On information and belief, COUNTY DEPUTIES DOES 1–20 violated such generally accepted standards and training, among other ways, by restraining and leaving STEVEN NEUROTH restrained in a prone position, lying face down, and/or otherwise impairing STEVEN NEUROTH's respiration by their use of pressure and improper restraints.

34.    Defendants COUNTY DEPUTIES DOES 1–20 grossly violated the generally accepted training and standards for proper and safe restraint of a person, and for use of force, in their misconduct against STEVEN NEUROTH.  Plaintiffs also allege that the extreme physical injuries to STEVEN NEUROTH—especially the injuries to Decedent's torso—are all evidence of an extremely high degree of force, and of wanton and willful violations of STEVEN NEUROTH's and Plaintiffs' Constitutional rights.

35.     Defendant COUNTY DEPUTIES DOES 1–20s' unreasonable restraint and use of excessive force against STEVEN NEUROTH was done at least in part because of STEVEN NEUROTH's untreated serious medical needs and/or psychiatric condition and disability.

36.     Following Defendant COUNTY DEPUTIES DOES 1–20s' use of extreme and deadly force against STEVEN NEUROTH, he was transferred to Ukiah Valley Medical Center where he died, after cardiac arrest, at about 12:46 a.m. on June 11, 2014.

37.     Defendants' conduct herein, including but not limited to their decision(s) to deny Decedent necessary medical care; failure to provide competent medical care and treatment; failure to provide him access and delivery to a hospital for the care and treatment for his life-threatening medical emergency; the manner in which they treated and incarcerated him, and their other acts and omissions under these circumstances, were contrary to generally accepted reasonable jail and medical procedures and standards, failed to comply with the appropriate standard of care, and contributed to the wrongful death of STEVEN NEUROTH.

38.     Plaintiffs are informed and believe and thereon allege that Defendants COUNTY, ALLMAN, CFMG, and FITHIAN failed to have a qualified medical and/or mental-health professional conduct intake and mental-health evaluations on inmate patients, with deliberate indifference to the inmate patients' serious medical and mental-health needs.  Furthermore, Plaintiffs are informed and believe and thereon allege that Defendants COUNTY, ALLMAN, CFMG, and FITHIAN allowed, and continue to allow, un-credentialed staff, including Licensed Vocational Nurses, to perform intake medical assessments and/or mental health assessments on patients without any appropriate clinical supervision by a Registered Nurse, physician, or otherwise properly licensed and credentialed health care provider, in violation of California law and generally accepted national standards.  Plaintiffs are informed and believe and thereon allege that COUNTY, ALLMAN, CFMG, and FITHIAN allowed, and continue to allow, un-credentialed staff to perform medical and mental-health assessments because it costs significantly less money than paying for properly licensed staff to do the work.

39.     STEVEN NEUROTH's death was the result of all Defendants' deliberately indifferent failure to summon and/or provide care and treatment for STEVEN NEUROTH's serious medical/psychiatric needs, and the unreasonable seizure and restraint, use of excessive force, and Defendants' conduct without a legitimate law enforcement purpose.

40.     Alternatively or concurrently, STEVEN NEUROTH's death was the proximate result of Defendant COUNTY's and ALLMAN's failure to reasonably train their Deputy Sheriffs in the proper and reasonable use of force, failure to implement and enforce generally accepted, lawful policies and procedures at the jail, and allowing and/or ratifying excessive and unreasonable force and restraint, and deliberate indifference to the serious medical/psychiatric needs of inmates.  These substantial failures reflect Defendant COUNTY's policies implicitly or directly ratifying and/or authorizing the deliberate indifference to serious medical needs and the use of excessive and unreasonable force and restraint by its deputy sheriffs, and the failure to reasonably train, instruct, monitor, supervise, investigate, and discipline deputy sheriffs employed by Defendant COUNTY in the use of force and inmates' medical needs.

41.     Alternatively or concurrently, Decedent's death was the proximate result of Defendant CFMG and FITHIAN's failure to reasonably staff, train, supervise, and equip their medical and mental healthcare staff in the proper and reasonable care of mentally ill, and/or emotionally disturbed inmates; failure to implement and enforce generally accepted, lawful policies and procedures at the jail; and deliberate indifference to the serious medical/psychiatric needs of inmates.  These substantial failures reflect Defendant CFMG's policies implicitly ratifying and/or authorizing the deliberate indifference to serious medical needs by its medical and mental healthcare staff and the failure to reasonably train, instruct, monitor, supervise, investigate, and discipline medical and mental healthcare staff employed by Defendant CFMG in the handling of mentally ill, and/or emotionally disturbed inmates.

42.     At all material times, and alternatively, the actions and omissions of each Defendant were intentional, wanton, and/or willful, conscience-shocking, reckless, malicious, deliberately

indifferent to Decedent's and Plaintiffs' rights, done with actual malice, grossly negligent, negligent, and objectively unreasonable.

43.     As a direct and proximate result of each Defendant's acts and/or omissions as set forth above, Plaintiffs sustained the following injuries and damages, past and future, among others:

    a.    Wrongful death of STEVEN NEUROTH;

    b.    Hospital and medical expenses;

    c.    Coroner's fees, funeral and burial expenses;

    d.    Loss of support and familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support;

    e.    Violation of constitutional rights;

    f.    Emotional distress;

    g.    STEVEN NEUROTH's loss of life, pursuant to federal civil rights law;

    h.    STEVEN NEUROTH's conscious pain, suffering, and disfigurement, pursuant to federal civil rights law;

    i.    All damages and penalties recoverable under 42 U.S.C. §§ 1983 and 1988, and as otherwise allowed under California and United States statutes, codes, and common law.

**FIRST CAUSE OF ACTION**
**(42 U.S.C. § 1983)**
**ALL PLAINTIFFS AGAINST DEFENDANTS COUNTY DEPUTIES DOES 1–20, CAUDILLO, AND DOES 21–35**

44.     Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

45.     By the actions and omissions described above, Defendants COUNTY DEPUTIES DOES 1–20, CAUDILLO, and DOES 21–35 violated 42 U.S.C. § 1983, depriving Plaintiffs of the following clearly established and well-settled constitutional rights protected by the First, Fourth, and Fourteenth Amendments to the United States Constitution:

a.  The right to be free from excessive and unreasonable force and restraint in the course of seizure as secured by the Fourth and/or Fourteenth Amendments;

b.  The right to be free from unlawful conscience-shocking force as secured by the Fourteenth Amendment;

c.  The right to be free from deliberate indifference to STEVEN NEUROTH's serious medical needs while in custody as a pretrial detainee as secured by the Fourth and/or Fourteenth Amendments; and

d.  The right to be free from wrongful government interference with familial relationships and Plaintiffs' right to companionship, society, and support of each other, as secured by the First and Fourteenth Amendments, and as secured by California Code of Civil Procedure §§ 377.20 et seq. and 377.60 et seq.

46.  Defendants subjected Plaintiffs to their wrongful conduct, depriving Plaintiffs of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiffs (individually and on behalf of STEVEN NEUROTH) and others would be violated by their acts and/or omissions.

47.  As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiffs sustained injuries and damages as set forth above at ¶ 43.

48.  The conduct of Defendants entitles Plaintiffs to punitive damages and penalties allowable under 42 U.S.C. § 1983 and California Code of Civil Procedure §§ 377.20 et seq., and other state and federal law.  Plaintiffs do not seek punitive damages against Defendant COUNTY.

49.  Plaintiffs are also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988 and applicable California codes and laws.

**SECOND CAUSE OF ACTION**
**(*Monell* - 42 U.S.C. § 1983)**
**ALL PLAINTIFFS AGAINST DEFENDANTS COUNTY, ALLMAN, CFMG, FITHIAN, AND DOES 21–35**

50.  Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

51.     The unconstitutional actions and/or omissions of Defendants COUNTY DEPUTIES DOES 1–20, and DOES 21–35, as well as other officers employed by or acting on behalf of the Defendants COUNTY and/or CFMG, on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of Defendants COUNTY and/or CFMG, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policymaking officers for Defendant COUNTY and its Sheriff's Department, and/or Defendant CFMG:

   a.   To deny inmates access to appropriate, competent, and necessary care for serious medical and psychiatric needs;

   b.   To allow Licensed Vocational Nurses to perform intake medical and mental health assessments without clinical supervision by a Registered Nurse or physician;

   c.   To allow, encourage, and require unlicensed, incompetent, inadequately trained and/or inadequately supervised staff to assess inmates' medical and psychiatric condition, needs, and treatment, including to decide whether or not to provide inmates with necessary emergency care and hospitalization;

   d.   To use or tolerate the use of excessive and/or unjustified force;

   e.   To use or tolerate the use of unlawful deadly force;

   f.   To engage in or tolerate unreasonable seizures and restraints;

   g.   To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning seizures and the use of control holds and restraint techniques, including avoiding asphyxiation of subjects being restrained by deputy sheriffs and avoiding blows to a subject's head and/or neck during altercations absent justification;

   h.   To fail to use appropriate and generally accepted law enforcement procedures for handling mentally ill and/or emotionally disturbed persons;

   i.   To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling mentally ill and/or emotionally disturbed persons;

   j.   To fail to use appropriate and generally accepted jail procedures for handling and housing mentally ill and/or emotionally disturbed persons, including, but not limited to, the standards of the National Commission on Correctional Health Care Standards for Health Services in Jails, and Title 15 of the California Code of Regulations;

k.   To cover up violations of constitutional rights by any or all of the following:

 i.   By failing to properly investigate and/or evaluate complaints or incidents of excessive and unreasonable force, unlawful seizures, and/or handling of mentally ill and/or emotionally disturbed persons;

 ii.   By ignoring and/or failing to properly and adequately investigate and/or investigate and discipline unconstitutional or unlawful law enforcement activity; and

 iii.   By allowing, tolerating, and/or encouraging law enforcement officers to: fail to file complete and accurate reports; file false reports; make false statements; intimidate, bias and/or "coach" witnesses to give false information and/or to attempt to bolster officers' stories; and/or obstruct or interfere with investigations of unconstitutional or unlawful law enforcement conduct by withholding and/or concealing material information;

l.   To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers and sheriff's department personnel, whereby an officer or member of the sheriff's department does not provide adverse information against a fellow officer or member of the department;

m.   To use or tolerate inadequate, deficient, and improper procedures for handling, investigating, and reviewing complaints of officer misconduct, including claims made under California Government Code §§ 910 et seq.

n.   To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in this Complaint and in subparagraphs (a) through (m) above, with deliberate indifference to the rights and safety of Plaintiffs and the public, and in the face of an obvious need for such policies, procedures, and training programs.

52. Defendants COUNTY, ALLMAN, CFMG, FITHIAN, and DOES 21–35 failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendants COUNTY DEPUTIES DOES 1–20, DOES 21–35, and other COUNTY, Sheriff's Department, and CFMG personnel, with deliberate indifference to Plaintiffs' constitutional rights, which were thereby violated as described above.

53.     The unconstitutional actions and/or omissions of Defendants COUNTY DEPUTIES DOES 1–20, DOES 21–35, CAUDILLO, and other Sheriff's Department personnel, as described above, were approved, tolerated, and/or ratified by policymaking officers for the COUNTY and its Sheriff's Department, including Defendant ALLMAN, and by CFMG and FITHIAN.  Plaintiffs are informed and believe and thereon allege that the details of this incident have been revealed to the authorized policymakers within the COUNTY, the Mendocino County Sheriff's Department, and CFMG, and that such policymakers have direct knowledge of the fact that the death of STEVEN NEUROTH was not justified, but represented an unconstitutional display of unreasonable, excessive and deadly force, and deliberate indifference to serious medical needs.  Notwithstanding this knowledge, the authorized policymakers within the COUNTY, its Sheriff's Department, and CFMG have approved of the conduct and decisions of COUNTY DEPUTIES DOES 1–20, CAUDILLO, and DOES 21–35 in this matter, and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the death of STEVEN NEUROTH. By so doing, the authorized policymakers within the COUNTY and its Sheriff's Department have shown affirmative agreement with the individual Defendants' actions and have ratified the unconstitutional acts of the individual Defendants.

54.     The aforementioned customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants COUNTY, ALLMAN, FITHIAN, and DOES 21–35 were a moving force and/or a proximate cause of the deprivations of Plaintiffs' clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983, as more fully set forth above at ¶ 45.

55.     Defendants subjected Plaintiffs to their wrongful conduct, depriving Plaintiffs of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for

whether the rights and safety of Plaintiffs and others would be violated by their acts and/or omissions.

56.     As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants COUNTY, ALLMAN, FITHIAN, and DOES 21-35 as described above, Plaintiffs sustained serious and permanent injuries and are entitled to damages, penalties, costs, and attorneys' fees as set forth above in ¶¶ 46–49, and punitive damages against Defendants CFMG and ALLMAN, FITHIAN, and DOES 21–35 in their individual capacities.

## THIRD CAUSE OF ACTION
### (Violation of Civil Code § 52.1)
### ALL PLAINTIFFS AGAINST ALL DEFENDANTS

57.     Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

58.     By their acts, omissions, customs, and policies, each Defendant acting in concert/conspiracy, as described above, and by threat, intimidation, and/or coercion, interfered with, attempted to interfere with, and violated Plaintiffs' rights under California Civil Code § 52.1 and under the United States Constitution and California Constitution as follows:

a.   The right to be free from excessive and unreasonable force and restraint in the course of a seizure as secured by the Fourth and/or Fourteenth Amendments to the United States Constitution and by the California Constitution, Article 1, § 13;

b.   The right to be free from unlawful, conscience-shocking force as secured by the Fourteenth Amendment to the United States Constitution;

c.   The right to be free from deliberate indifference to STEVEN NEUROTH's serious medical needs while in custody as a pretrial detainee as secured by the Fourth and/or Fourteenth Amendments to the United States Constitution and by California Constitution, Article 1, §§ 7 and 13;

d.   The right to be free from wrongful government interference with familial relationships and Plaintiffs' right to companionship, society, and support of each other, as secured by the First and Fourteenth Amendments to the United

States Constitution, and as secured by California Constitution, Article 1, § 7 and California Code of Civil Procedure §§ 377.60 et seq.

e.  The right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, as secured by the California Constitution, Article 1, § 1;

f.  The right to life, liberty, and property and not to be deprived of those without due process of law, as secured by the California Constitution, Article 1, § 7;

g.  The right to protection from bodily restraint, harm, or personal insult, as secured by California Civil Code § 43; and

h.  The right to medical care as required by California Government Code § 845.6.

59.  Separate from, and above and beyond, Defendants' attempted interference, interference with, and violation of Plaintiffs' rights as described above, Defendants violated Plaintiffs' rights by the following conduct constituting threats, intimidation, or coercion:

a.  With deliberate indifference to STEVEN NEUROTH's serious medical needs, suffering, and risk of grave harm including death, depriving STEVEN NEUROTH of necessary, life-saving care for his medical and/or psychiatric needs;

b.  Threatening STEVEN NEUROTH with violence in the absence of any threat presented by Mr. NEUROTH, or any justification whatsoever;

c.  Using deliberately reckless and provocative tactics on STEVEN NEUROTH in violation of generally accepted law enforcement training and standards, and in violation of STEVEN NEUROTH's rights;

d.  Threatening violence against STEVEN NEUROTH, with the apparent ability to carry out such threats, in violation of Civ. Code § 52.1(j);

e.  Causing STEVEN NEUROTH to be subjected to multiple blows, strikes, kicks, and other injurious force without justification;

f.  Restraining STEVEN NEUROTH in a manner well-known to impair and obstruct his ability to breathe;

g.  Causing STEVEN NEUROTH to be subjected to violence, and threat of violence, because of his disability(ies) and medical/psychiatric condition;

h.  Violating STEVEN NEUROTH's rights to be free from excessive force and deliberate indifference to his serious medical needs; and

COMPLAINT AND JURY DEMAND                                                    20

      i.    Instituting and maintaining the unconstitutional customs, policies, and practices described herein.

60.      Defendant COUNTY is vicariously liable for the violations of state law and conduct of its officers, deputies, employees, and agents, including individual named defendants, under California Government Code section 815.2.

61.      As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of Plaintiffs' rights under the United States and California Constitutions, Plaintiffs sustained injuries and damages, and against each and every Defendant are entitled to relief as set forth above at ¶¶ 46–49, and punitive damages against all individual Defendants, including all damages allowed by California Civil Code §§ 52 and 52.1 and California law, not limited to costs attorneys' fees, and civil penalties.

**FOURTH CAUSE OF ACTION**
**(Negligence)**
**ALL PLAINTIFFS AGAINST DEFENDANTS COUNTY DEPUTIES DOES 1–20, ALLMAN, AND COUNTY**

62.      Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

63.      At all times, each Defendant owed Plaintiffs the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

64.      At all times, each Defendant owed Plaintiffs the duty to act with reasonable care.

65.      These general duties of reasonable care and due care owed to Plaintiffs by all Defendants include but are not limited to the following specific obligations:

      a.    To summon necessary and appropriate medical care for STEVEN NEUROTH;

      b.    To refrain from using excessive and/or unreasonable force against STEVEN NEUROTH;

      c.      To refrain from unreasonably creating the situation where force, including but not limited to deadly force, is used;

      d.      To refrain from unreasonably creating danger or increasing STEVEN NEUROTH's risk of harm;

      e.      To use generally accepted law enforcement procedures and tactics that are reasonable and appropriate for STEVEN NEUROTH's status as a mentally ill and/or emotionally disturbed person with serious medical needs;

      f.      To refrain from abusing their authority granted them by law;

      g.      To refrain from violating Plaintiffs' rights as guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

66.      Additionally, these general duties of reasonable care and due care owed to Plaintiffs by Defendants COUNTY and ALLMAN include but are not limited to the following specific obligations:

      a.      To properly and reasonably hire, supervise, train, retain, investigate, monitor, evaluate, and discipline each person who was responsible for the safe, lawful, and appropriate jail custody of STEVEN NEUROTH, including the Doe Defendants herein;

      b.      To properly and adequately hire, investigate, train, supervise, monitor, evaluate, and discipline their employees, agents, and/or law enforcement officers to ensure that those employees/agents/officers act at all times in the public interest and in conformance with the law;

      c.      To institute and enforce proper procedures and training for prevention and treatment of mental illness and drug intoxication, to coordinate inmate assessment, placement, and care with the jail physicians and nursing staff, jail mental health staff, and jail corrections staff;

      d.      To make, enforce, and at all times act in conformance with policies and customs that are lawful and protective of individual rights, including Plaintiffs';

      e.      To refrain from making, enforcing, and/or tolerating the wrongful policies and customs set forth above at ¶ 51.

67.      Defendants, through their acts and omissions, breached each and every one of the aforementioned duties owed to Plaintiffs.

68.     As a direct and proximate result of Defendants' negligence, Plaintiffs sustained injuries and damages, and against each and every Defendant are entitled to relief as set forth above at ¶¶ 46–49, and punitive damages against all individual Defendants.

**FIFTH CAUSE OF ACTION**
**(Assault and Battery)**
<u>**ALL PLAINTIFFS AGAINST DEFENDANTS  COUNTY DEPUTIES DOES 1–20, AND**</u>
<u>**COUNTY**</u>

69.     Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

70.     Defendants COUNTY DEPUTIES DOES 1–20, inclusive, placed STEVEN NEUROTH in immediate fear of death and severe bodily harm, and killed him by beating and battering him without just provocation or cause, constituting assault and battery.

71.     Defendants' conduct was neither privileged nor justified under statute or common law.

72.     As a direct and proximate result of Defendants' assault and battery of STEVEN NEUROTH, Plaintiffs sustained injuries and damages and are entitled to relief as asset forth above at ¶¶ 46–49, and punitive damages against COUNTY DEPUTIES DOES 1–20, in their individual capacities.

**SIXTH CAUSE OF ACTION**
**(Violation of California Government Code § 845.6)**
<u>**ALL PLAINTIFFS AGAINST DEFENDANTS COUNTY DEPUTIES DOES 1–20, DOES 21–**</u>
<u>**35, and COUNTY**</u>

73.     Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

74. Defendants COUNTY DEPUTIES DOES 1–20, and DOES 21–35 knew or had reason to know that STEVEN NEUROTH was in need of immediate and higher level medical care, treatment, observation and monitoring, and being transferred for emergency inpatient hospitalization, and each failed to take reasonable action to summon and/or to provide him access to such medical care and treatment. Each such individual defendant, employed by and acting within the course and scope of his/her employment with Defendant COUNTY, knowing and/or having reason to know this, failed to take reasonable action to summon and/or provide Decedent access to such care and treatment in violation of California Government Code § 845.6.

75. As legal cause of the aforementioned acts of these DEFENDANTS, Plaintiffs were injured as set forth above, and their losses entitle them to all damages allowable under California law. Plaintiffs sustained serious and permanent injuries and are entitled to damages, penalties, costs, and attorney fees under California law as set forth in ¶¶ 46–49, above.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request the following relief against each and every Defendant herein, jointly and severally:

    a.    Compensatory and exemplary damages in an amount according to proof and which is fair, just, and reasonable;

    b.    Punitive damages under 42 U.S.C. § 1983 and California law in an amount according to proof and which is fair, just, and reasonable;

    c.    All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C. §§ 1983 and 1988; California Code of Civil Procedure §§ 377.20 et seq., 377.60 et seq., and 1021.5; California Civil Code §§ 52 et seq., 52.1; and as otherwise may be allowed by California and/or federal law;

    d.    Declaratory and injunctive relief, including but not limited to the following:

        i.    An order prohibiting Defendants and their sheriff's deputies from unlawfully interfering with the rights of Plaintiffs and others to be free from unreasonable seizures and restraints and excessive and unreasonable force;

ii.    An order requiring Defendants to institute and enforce appropriate and lawful policies and procedures for handling mentally ill and/or emotionally disturbed persons, and/or persons with serious medical needs;

iii.   An order prohibiting Defendants and their sheriff's deputies from engaging in the "code of silence" as may be supported by the evidence in this case;

iv.    An order requiring Defendants to train all sheriff's deputies concerning generally accepted and proper tactics and procedures for the use of deadly force, the use of Tasers, and the handling of addicted, mentally ill and/or emotionally disturbed persons, and/or persons with serious medical needs and this Court's orders concerning the issues raised in injunctive relief requests i-iv, above;

v.     An order requiring Defendants to train all medical and mental health professionals concerning generally accepted and proper tactics and procedures for the care and treatment of chemically dependent, mentally ill and/or emotionally disturbed persons and/or persons with serious medical needs and this Court's order concerning the issues raised in injunctive relief request iii, above.

e.     Such other and further relief as this Court may deem appropriate.

## JURY DEMAND

Plaintiffs hereby demand a jury trial in this action.


Dated:  July 10, 2015                    HADDAD & SHERWIN LLP


                                         /s/ Michael J. Haddad
                                         _____
                                         MICHAEL J. HADDAD
                                         Attorneys for Plaintiffs