UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| JAMES NEUROTH,<br><br>    Plaintiff,<br><br>    v.<br><br>MENDOCINO COUNTY, *et al.*,<br><br>    Defendants. | Case No. 15-cv-03226-NJV<br><br>**AMENDED**<br>**ORDER ON MOTION TO DISMISS**<br><br>Re: Dkt. No. 33 |

Plaintiff James Neuroth ("Plaintiff") filed this action against the County of Mendocino and Sheriff Thomas Allen (together "the County Defendants"), California Forensic Medical Group ("CFMG"), Dr. Taylor Fithian, and Jennifer Caudillo. Plaintiff filed a First Amended Complaint (Doc. 31), to which Defendants CFMG, Dr. Taylor Fithian, and Jennifer Caudillo filed an Answer (Doc. 32), and County Defendants filed a Motion to Dismiss. (Doc. 33). Plaintiff filed a Response to the Motion (Doc. 34), to which County Defendants filed a Reply (Doc. 35).   For the reasons that follow the court will grant the motion in part and deny the motion in part. Additionally, Plaintiff will be given time to file a second amended complaint.

**FACTS AS ALLEGED**

Plaintiff is the brother of Decedent Steven Neuroth. The First Amended Complaint alleges that Steven Neuroth "was a mentally ill man, having been diagnosed with paranoid schizophrenia, schizo-affective disorder, and depression." First Amend. Compl. (Doc. 31) at ¶19. On June 10, 2014, at approximately 10:00 p.m., Willits Police Officers encountered Steven Neuroth, who told them that an unknown person was after him, and that all the traffic in Willits was going to hurt him. *Id*. at ¶20. The officers arrested Steven Neuroth on suspicion that he was under the influence

of a controlled substance. *Id*. The officers reported that Steven Neuroth was "extremely paranoid," "believed someone was out to 'kill him,'" "was going through a psychosis state," and that he was afraid of "snakes" in the police car. *Id*. Steven Neuroth was booked into the Mendocino County jail as a pretrial detainee. At the time of booking, he had no apparent physical injuries. *Id*.

Mendocino County contracts its correctional healthcare to Defendant CFMG. *Id*. at ¶9. CFMG employee Defendant Jennifer Caudillo, L.V.N. performed the jail's intake medical assessment on Steven Neuroth. *Id*. ¶11, 21. Defendant Caudillo reported in her assessment that Steven Neuroth's heart beat was 129 beats per minute, which indicated that he was suffering from tachycardia. *Id*. Defendant Caudillo noted both that Steven Neuroth's blood pressure was 151/92, whereas normal blood pressure is less than 120/80, and that his respiration rate was 18 breaths per minute, whereas the respiration rate for a normal adult is 12 breaths per minute. *Id*. Defendant Caudillo also noted that Steven Neuroth was "very paranoid." *Id*.

Defendant Caudillo had actual knowledge that Steven Neuroth was in extreme medical and psychiatric distress and in need of emergency medical/psychiatric care, but decided not to provide or request such necessary care. *Id*. Defendant Caudillo also decided not to secure, or request, such necessary treatment for Steven Neuroth in a hospital. *Id*. At approximately midnight on June 10, 2014, while jail staff had actual knowledge that Steven Neuroth was apparently psychotic, paranoid, and suffering from serious medical/psychiatric needs, Defendants acted with deliberate indifference to those serious medical/psychiatric needs, and denied Steven Neuroth necessary medical and/or psychiatric care, including necessary emergency care. *Id*. at ¶23. Steven Neuroth became unable to care for himself or to understand and follow the commands and directives of jail personnel. *Id*.

"When Steven Neuroth allegedly acted paranoid and was uncooperative, jail staff including deputies used a high level of injurious force," sufficient to cause Steven Neuroth's death. *Id*. at ¶24. Sheriff's Deputies used control holds to take Steven Neuroth to the ground where they put restraints on his legs. *Id*. Deputies moved Steven Neuroth to Safety Cell #2, "where they continued to use excessive and unjustified force against him, including, on information and belief,

1    multiple strikes, blows, and control holds." *Id*. Defendants also restrained Steven Neuroth in such

2    a way that he suffered restraint associated asphyxia (or positional asphyxia) and death. *Id*.

3    "According to the official Mendocino County autopsy, injuries that Defendants caused to

4    Steven Neuroth in the jail included: blunt force injuries [] widespread; fracture, essentially non-

5    displaced, of the left fifth rib at the costochondral junction; general visceral passive hyperemia

6    (organ injuries); and Petechiae, epicardial, focal; and other serious physical injuries. *Id*. at ¶25.

7    Steven Neuroth was transferred to the Ukiah Valley Medical Center where he died, after cardiac

8    arrest, at about 12:46 a.m. on June 11, 2014. *Id*. at ¶35.

## CLAIMS

Plaintiff presents six causes of action against Defendants: (1) a 42 U.S.C. § 1983 ("§ 1983") claim against Doe Deputies and CFMG Doe employees for use excessive force and deliberate indifference to medical needs under the Fourth and Fourteenth Amendments to the U.S. Constitution; (2) a § 1983 *Monell* claim against the County of Mendocino, Sheriff Allman, CFMG, and Dr. Fithian; (3) a Bane Act claim under California Civil Code § 52.1 against all Defendants; (4) a common law negligence claim against the County of Mendocino, Sheriff Allman and Doe Deputies; (5) a common law assault and battery claim against the County of Mendocino and Doe Deputies; and (6) a failure to summon medical care claim, per California Government Code § 845.6, against the County of Mendocino, Doe Deputies, and CFMG Doe employees.

## LEGAL STANDARD

The purpose of a motion to dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure is to test the legal sufficiency of the claims stated in the complaint. A motion to dismiss may be brought under Rule 12(b)(6) when the plaintiff fails to state a claim upon which relief can be granted.

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). While Rule 8 "does not require 'detailed factual allegations,'" a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937,

1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570, 127 S.Ct. 1955, 1955 (2007)). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Thus, in order to survive a motion to dismiss, the nonmoving party must allege facts that are "enough to raise a right to above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.

Dismissal of a complaint can be based on either the lack of a cognizable legal theory or the lack of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

## DISCUSSION

### A.  *Standing for Prospective Relief*

County Defendants assert that Plaintiff lacks standing to seek injunctive relief. Quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 180-181 (2000), County Defendants argue that "[t]o demonstrate standing, 'a plaintiff must show (1) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" Def.'s Mot. (Doc. 33) at 13. Indeed, a plaintiff seeking injunctive relief must demonstrate a "real or immediate threat that they will be wronged again—a likelihood of substantial and immediate irreparable injury." *Los Angeles v. Lyons,* 461 U.S. 95, 111 (1983). Defendants assert that Plaintiff cannot establish standing for two reasons. "First, none of the allegedly wrongful conduct was ever directed against Plaintiff himself, and therefore he can have no Direct Claim for equitable relief regarding such conduct. Second, because there is no "real and immediate" threat of future injury to the decedent, then Plaintiff has no standing to assert equitable prospective relief via a Survivor Claim on the decedent's behalf." Def.'s Mot. (Doc. 33) at 6.

Plaintiff counters that "[i]t is premature at the pleading stage to eliminate a potential

4

remedy should plaintiffs prevail in this litigation." Pl.'s Resp. (Doc. 34) at 16 (quoting *Johnson v. Shasta Cty.,* 83 F. Supp. 3d 918, 933 (E.D. Cal. 2015). "However, the Ninth Circuit has held that a plaintiff's lack of standing may be raised at the pleading stage." *East v. City of Richmond*, No. C 10-2392 SBA, 2010 WL 4580112, at *6 (N.D. Cal. Nov. 3, 2010) (citing *Schmier v. United States Court of Appeals for the Ninth Circuit,* 279 F.3d 817, 823 (9th Cir. 2002)). In addition, "[Plaintiff] argues that he has standing to seek injunctive relief because he alleges a pattern and practice of unlawful police conduct. But Plaintiff does not seek to represent a class of similarly situated individuals, and his complaint contains no factual allegations showing that [Defendants] had previously subjected him to unlawful conduct." *Bass v. City of Fremont*, No. C12-4943 TEH, 2013 WL 891090, at *8 (N.D. Cal. Mar. 8, 2013).

To the extent Plaintiff is relying on his status as successor in interest to the harm perpetrated on the decedent, this too would fail. "For injunctive relief to be considered, Plaintiff[] cannot speculate that these events may happen again, but must assert that there is a 'likelihood of substantial and immediate irreparable injury,'—something that [he] cannot under the circumstances of this case." *Sullivan v. City of San Rafael*, No. C 12-1922 MEJ, 2012 WL 3236058, at *10 (N.D. Cal. Aug. 6, 2012). Because the injury was perpetrated on the decedent, there is no risk of future harm. Accordingly, the request to dismiss the requests for prospective injunctive relief is granted with prejudice.

### B.   Standing for Certain Damages

Here, County Defendants seek dismissal of Plaintiff's "§ 1983 Direct Claims" for lack of standing. Specifically, County Defendants argue that § 1983 does not entitle Plaintiff to recover damages for his own injuries based on conduct which occurred to his brother. For his part, Plaintiff states: (1) that he has brought his claims pursuant to California's wrongful death statute California Code of Civil Procedure §§ 377.20 *et seq*.,; (2) that he has also brought a survival claim pursuant to California law and § 1983; (3) that "Plaintiff's Fourth and Fourteenth Amendment wrongful death claim survives the death of his brother"; (4) "'that Congress intended by [§ 1983] to allow survivors to sue for their harm stemming from the deprivation of a loved one's civil rights.' *Crumpton v. Gates*, 947 F.2d 1418, 1421 (9th Cir. 1991)"; and (5) that the

5

"Ninth Circuit and Northern District courts have long found wrongful death claims available to heirs of a decedent in § 1983 death cases." Pl.'s Resp. (Doc. 34) at 8-9.

It appears that there is much confusion on this issue. Indeed, in the Motion, County Defendants assert that there is a "mashing" of claims, while Plaintiff responds with allegations that County Defendants "mischaracterize" the claims. Finally, County Defendants reply that Plaintiff simply "conflagrates" the two types of § 1983 claims and "mistakenly" argues that he has a Direct Claim under § 1983. In some respects, the parties are arguing about what they are arguing about. From what the court can parse, the confusion stems from the terms of art used in the briefing, the nature of the combined state and federal claims, and the wording of the First Amended Complaint.

The Reply makes clear that the parties agree as to the first two issues above: (1) that Plaintiff has brought his claims pursuant to California's wrongful death statute, California Code of Civil Procedure §§ 377.20 *et seq.*; and (2) that he has also brought a survival claim pursuant to California law and § 1983. Plaintiff's third point, that his "Fourth and Fourteenth Amendment wrongful death claim survives the death of his brother," is where some of the confusion begins. Plaintiff's Fourth and Fourteenth Amendment claims are his § 1983 survival actions, which are separate from any wrongful death claims brought pursuant to state law. This is because there is no "wrongful death" claim under § 1983. *Estate of Lopez ex rel. Lopez v. Torres*, 105 F. Supp. 3d 1148, 1159 (S.D. Cal. 2015) ("The confusion seems to be in that some courts (primarily in unpublished dispositions) have allowed claims for wrongful death under § 1983 to proceed . . . What is clear from these cases is that even if the claim was described in the pleadings as a wrongful death claim under section 1983, the courts only allowed such claims to be maintained if they were construed as Fourth Amendment excessive force claims."). This negates Plaintiff's fifth point. The cases to which Plaintiff points for the assertion that the "Ninth Circuit and Northern District courts have long found wrongful death claims available to heirs of a decedent in § 1983 death cases," do not hold such. For example, Plaintiff points to *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998), as amended (Nov. 24, 1998) in support. However, that case merely reasserts the maxim that "[i]n § 1983 actions, however, the survivors of an individual killed as a result of an officer's excessive use of force may assert a Fourth

Amendment claim on that individual's behalf if the relevant state's law authorizes a survival action." *Id*. at 369. Plaintiff also points to *Teran v. Cty. of Monterey*, No. C 06-06947 JW, 2009 WL 1424470, at *5 (N.D. Cal. May 20, 2009). Here again, the *Teran* court explains that "[i]n § 1983 actions, the survivors of an individual killed as a result of an officer's excessive use of force may assert a Fourth Amendment claim on that individual's behalf if the relevant state's law authorizes a survival action. Under Cal. Code Civ. Proc. § 377.30, a survival action may be commenced by a decedents personal representative or, if none, by the decedent's successor-in interest." *Id*. In other words, there are survival actions under § 1983 if state law allows, which California does, there are state law survival actions, and there are state law wrongful death actions.

As to Plaintiff's fourth point, that Congress intended § 1983 to allow survivors to sue for their harm stemming from the deprivation of a loved one's civil rights, these loss of liberty claims are only available to "parents and children of a person killed by a government officer." *Teran* v., 2009 WL 1424470 at *5. And, as County Defendants rightly pointed out, Plaintiff properly withdrew those claims when he filed the First Amended Complaint.

Having set forth the proper parameters of Plaintiff's claims, the court must now evaluate whether the claims in the First Amended Complaint fit those parameters. The court finds that Defendants are correct that the claims are impermissibly mixed with language of direct survival claims and require correction. Both the First and Second causes of action speak of the harm as having been suffered by Plaintiff as opposed to Steven Neuroth. "[S]urvival actions [] are based on injuries incurred by the decedent." *Hayes v. Cty. of San Diego*, 736 F.3d 1223, 1229 (9th Cir. 2013). In order for Defendants to properly answer and defend the allegations, the claims must be amended to properly set forth the causes of action. *See e.g. Davis v. Bender Shipbuilding & Repair Co*., 27 F.3d 426, 429 (9th Cir.1994) ("In a survival action, a decedent's estate may recover damages on behalf of the decedent for injuries that the decedent has sustained. In a wrongful death action, by comparison, the decedent's dependents may only pursue claims for personal injuries they have suffered as a result of a wrongful death.").

The First and Second Causes of Action will be dismissed with leave to amend. It is clear that Plaintiff can successfully amend these claims to state a claim upon which relief can be

7

granted. The court is of the opinion that the parties could have and should have resolved the confusions with this issue prior to the filing of the First Amended Complaint and avoided needless motions practice and would strongly encourage the parties to meet and confer regarding the second amended complaint prior to its filing.

### C. *Monell* Claims

County Defendants also seek dismissal of Plaintiff's § 1983 claims in the Second Cause of Action on the basis that Plaintiff has not sufficiently stated a *Monell* cause of action against the County. Under *Monell*, a municipality "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). County Defendants assert that while the First Amended Complaint "alleges at least 16 separate policies of action, inaction, and ratification by County policymakers as a basis for liability in two subject matter areas: use of excessive force and deliberate indifference to medical/mental health needs of the decedent" it "contains no factual allegations to support any of these *Monell* claims, and does not even point to a specific policy or practice that was somehow unlawful or deficient." Cnty. Defs.' Mot. (Doc. 33) at 17. Thus, County Defendants argue that the First Amended Complaint "does not provide notice to the County as to what Plaintiff believes the County did that was wrong." *Id*. More specifically, County Defendants allege that Plaintiff has failed to allege sufficiently facts in support of a "policy of action" a "policy of inaction," or "ratification." *See id*. at 18-26.

The court finds that County Defendants are attempting to assert too high a burden at this, the pleading stage. County Defendants' issues are not with the allegations regarding customs or policies, or omissions of the same, but rather with the factual sufficiency of the claims. Indeed, a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir.2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). In this case, after setting forth the factual

allegations describing the Deputy Sheriffs' conduct in their alleged use extreme and deadly force against Steven Neuroth, Plaintiff alleged that:

> Defendant COUNTY's and ALLMAN's failure to reasonably train and require their Deputy Sheriffs to use only proper and reasonable force when necessary under the circumstances, failure to implement and enforce generally accepted, lawful policies and procedures at the jail, and allowing and/or ratifying excessive and unreasonable force and restraint, and deliberate indifference to the serious medical/psychiatric needs of inmates. These substantial failures reflect Defendant COUNTY's policies implicitly or directly ratifying and/or authorizing the deliberate indifference to serious medical needs and the use of excessive and unreasonable force and restraint by its deputy sheriffs, and the failure to reasonably train, instruct, monitor, supervise, investigate, and discipline deputy sheriffs employed by Defendant COUNTY in the use of force and inmates' medical needs.

First Amend. Compl. (Doc. 99) at ¶39.  The court finds these factual allegations, along with the other factual allegations in the complaint regarding the Deputy Sheriff's alleged conduct, sufficient to support Plaintiff's claims under a *Monell* theory of liability and provide County Defendants of fair notice to defend itself effectively.  *AE ex rel. Hernandez,* 666 F.3d at 637.  Accordingly, the request to dismiss the Second Cause of Action against the County of Mendocino is denied.

### D.     State law Claims

County Defendants challenge Plaintiff's state law claims brought as:  (1) a Survivor Claim based on alleged violations of the Bane Act, California Civil Code § 52.1;  (2) Direct and Survivor Claims for common law negligence;  (3) Direct and Survivor Claims for assault and battery; and (4) Direct and Survivor Claims for violation of California Government Code § 845.6, regarding a failure to take reasonable action to summon medical care for an inmate.  County Defendants move to dismiss the causes of actions against the County of Mendocino based on the first three categories of state law claims pursuant to immunity under California Government Code section 844.6 and for dismissal of the 4th category based on failure to state a claim.

Section 844.6 states in relevant part that "[e]xcept as provided in California Government Code § 845.6, a public entity cannot be liable for an injury to a prisoner." *Frary v. Cty. of Marin*, No. C 12-3928 MEJ, 2012 WL 6218196, at *12 (N.D. Cal. Dec. 13, 2012) (citing Cal. Gov't Code § 844.6).  Plaintiff counters that "§ 844.6(d) specifically negates such immunity for claims based on the 'negligent or wrongful act or omission' of 'a public employee'" and that Defendants are

9

vicariously liable under of California Government Code section 815.2.  Pl.'s Br. (Doc. 34) at 30.

The exception to immunity contained within subsection (d) of 844.6 applies to "a public employee."  Plaintiff's reliance on a theory of vicarious liability through an employee through § 815.2 in order to avoid the immunity provisions of § 844.6 fails because "[a]lthough a public entity may be vicariously liable for the acts and omissions of its employees (Gov. Code, § 815.2), that rule does not apply in the case of injuries to prisoners." *Lawson v. Superior Court*, 180 Cal. App. 4th 1372, 1383, 103 Cal. Rptr. 3d 834, 844 (2010) (discussing interplay of immunities in claims brought pursuant to § 815.2, 844.6 and 845.6).  Thus, the Third, Fourth, and Fifth Causes of Action are dismissed as to the County of Mendocino, without leave to amend.

As to the fourth category, Direct and Survivor Claims for violation of California Government Code § 845.6, failure to take reasonable action to summon medical care for an inmate, the court finds that Plaintiff has stated a claim.  California Government Code section 845.6 states in relevant part:

> Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but, except as otherwise provided by Sections 855.8 and 856, a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

In other words, "[p]ublic entities and public employees are liable for injuries proximately caused to prisoners where: (1) 'the employee is acting within the scope of his [or her] employment,' (2) 'the employee knows or has reason to know that the prisoner is in need of immediate medical care,' and (3) 'he [or she] fails to take reasonable action to summon such medical care.'" *Resendiz v. Cty. of Monterey*, No. 14-CV-05495-LHK, 2015 WL 7075694, at *8 (N.D. Cal. Nov. 13, 2015) (quoting Gov. Code, § 845.6).

Plaintiff's Sixth Cause of Action, failure to summon medical care, is factually supported where the First Amended Complaint alleges that "jail staff had actual knowledge" of Steven Neuroth's immediate and serious medical needs and did not provide him care.  First Amend. Compl. (Doc. 31) at ¶23.  However, "California courts have held that § 845.6 does not impose an obligation to provide necessary medication or treatment . . . [t]hus, once a prisoner is receiving

10

medical care, prison employees are under no further obligation under § 845.6." *Id*. Accordingly, County Defendants are correct that the allegations contained in the Sixth Cause of Action related to "higher level medical care, treatment, observation and monitoring" and "access to such medical care and treatment" must be removed from the second amended complaint.

### E. Sheriff Allman

County Defendants move to dismiss the claims against Sherriff Allman. First, County Defendants move to dismiss the § 1983 claim, as it was improperly brought as a *Monell* claim, which would only apply to Sheriff Allman in his official capacity, which is the same as a suit against the County. Plaintiff responds that he has brought "claims under §1983 for individual liability against Sheriff Allman as a supervisor in his personal capacity." Pl. Resp. (Doc. 34) at 21.

County Defendants are correct that because the Second Cause of Action expressly relies on *Monell*, it could only be brought against the Sheriff in his official capacity, which is a suit against the County. This is because *Monell* established §1983 liability against "a public entity," and when "individuals are being sued in their official capacity as municipal officials and the municipal entity itself is also being sued, then the claims against the individuals are duplicative and should be dismissed.'" *Roy v. Contra Costa Cnty.*, No. 15-CV-02672-TEH, 2015 WL 5698743, at *4 (N.D. Cal. Sept. 29, 2015) (quoting *Vance v. Cnty. of Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal. 1996)). Accordingly, the claims in the Second Cause of Action are dismissed against Sheriff Allman.

However, "[a] supervisor can be liable in his individual capacity 'for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation . . .; or for conduct that showed a reckless or callous indifference to the rights of others.'" *Watkins v. City of Oakland, Cal.*, 145 F.3d 1087, 1093 (9th Cir. 1998) (internal quotations, citations and corrections omitted). Thus, through amendment, Plaintiff will be allowed to add a separate claim against Sheriff Allman in his individual capacity pursuant to § 1983.

Second, County Defendants seek dismissal of the state law claims brought against Sheriff

11

Allman in the Third Cause of Action alleging a Survivor Claim based on the Bane Act, California Civil Code § 52.1, and the Fourth Cause of Action alleging Direct Claims and Survivor Claims for common law negligence. County Defendants assert that all claims against Sheriff Allman in his official capacity should be dismissed because, "both the County and Sheriff Allman are immune from such claims under California Government Code § 844.6." Cnty. Def.s' Mot (Doc. 33) at 31. In Response, Plaintiff states that Sheriff Allman is "individually liable under the Bane Act." Pl.'s Resp. (Doc. 34) at 33. The court takes this to mean that the Bane Act claim in the Third Cause of Action is brought against Sheriff Allman in his individual capacity.

The Bane Act "provides that a person may bring a cause of action 'in his or her own name and on his or her own behalf' against anyone who 'interferes by threats, intimidation or coercion,' with the exercise or enjoyment of any constitutional or statutory right." *Bay Area Rapid Transit Dist. v. Superior Court*, 38 Cal.App.4th 141, 144, 44 Cal.Rptr.2d 887 (Cal. App. 1995) (quoting Cal. Civ. Code § 52.1). County Defendants assert that the First Amended Complaint fails to assert facts in support of this claim.

Plaintiff points the court to *M.H. v. Cty. of Alameda*, 90 F. Supp. 3d 889, 899 (N.D. Cal. 2013), wherein the court held that "[b]ecause deliberate indifference claims necessarily require more than 'mere negligence,' a prisoner who successfully proves that prison officials acted or failed to act with deliberate indifference to his medical needs . . . adequately states a claim for relief under the Bane Act." The *M.H.* court found that "[b]ecause Plaintiffs adequately state a Bane Act claim with respect to [the individual nurse], her liability also gives rise to *respondeat superior* liability with respect to [the prison health care provider] under traditional California common law principles." *M.H.*, 90 F. Supp. 3d at 897. Based on the allegations in the complaint related to the Deputy Sheriffs' actions and the allegations that Sheriff Allman failed to train his employees and had implemented policies, practices, and customs that led to the Steven Neuroth's death, the court finds that Plaintiff has sufficiently pled a claim against Sheriff Allman in his individual capacity under the Bane Act.

Third, County Defendants seek the dismissal of the negligence claims against Sheriff Allman in the Fourth Cause of Action as insufficiently supported by facts. Plaintiff counters that

12

the facts set forth in the First Amended Complaint state a proper negligence claim under California law because "a supervisor can be held liable under California law for negligence in hiring or retaining an employee who is incompetent or unfit. *Najera v. Southern Pacific Co.*, 191 Cal.App.2d 634, 637-638 (1961)." Pl.'s Resp. (Doc. 34) at 34. However, "a claim of negligent hiring, training, and supervision is, in reality, one against the entity itself." *Hillbloom v. Cty. of Fresno*, 2010 WL 3341922, at *5 (E.D. Cal. Aug. 23, 2010). The First Amended Complaint alleges that Sheriff Allman acted negligently through the negligent training and supervision and hiring of jail staff. Thus, the cause of action fails as a matter of law. *See e.g. Sanders v. City of Fresno*, 2006 WL 1883394, at *8 (E.D. Cal. July 7, 2006) ("[A]ttempting to simply add Chief Dyer as an individual Defendant in an attempt to avoid the clear prohibition of alleging negligence against a public entity is not permissible since it is virtually the same as attempting to impermissibly set forth the same claims against the City . . . because the City necessarily acts through its Police Chief."). Accordingly, the claims against Sheriff Allman in the Fourth Cause of Action are dismissed with prejudice.

## CONCLUSION

For the reasons stated above, it is ORDERED that the Motion to Dismiss is granted in part and denied in part. Plaintiff shall, on or before February 18, 2016, file a second amended complaint in accordance with the court's rulings herein.

The court reiterates its opinion that the parties would do well to meet and confer regarding the second amended complaint to ensure that it incorporates all of the court's rulings and so that the court can set a case management conference and begin moving this case toward a final resolution.

**IT IS SO ORDERED**.

Dated: January 28, 2016

_____
NANDOR J. VADAS
United States Magistrate Judge