1  MICHAEL J. HADDAD (State Bar No. 189114)
   JULIA SHERWIN (State Bar No. 189268)
2  MAYA SORENSEN (State Bar No. 250722)
   TERESA ALLEN (State Bar No. 264865)
3  HADDAD & SHERWIN LLP
4  505 Seventeenth Street
   Oakland, California  94612
5  Telephone: (510) 452-5500
   Facsimile:   (510) 452-5510
6
7  Attorneys for Plaintiff James Neuroth

8
                 **UNITED STATES DISTRICT COURT**
9
              **NORTHERN DISTRICT OF CALIFORNIA**
10

11
   JAMES NEUROTH, Individually and as              )
12 Successor in Interest of Decedent STEVEN        )      No: 3:15-cv-03226-RS
   KELLOGG NEUROTH,                                )
13                                                 )
14          Plaintiff,                             )      **DECLARATION OF TODD**
       vs.                                         )      **WILCOX, MD, MBA, FACCP**
15                                                 )
   MENDOCINO COUNTY, a public entity;              )
16 MENDOCINO COUNTY SHERIFF-                       )
   CORONER THOMAS D. ALLMAN, in his                )
17 individual and official capacities;             )
   CORRECTIONS CAPTAIN TIM PEARCE;                 )
18 SERGEANT LORI KNAPP; DEPUTY                     )
19 FRANK MASTERSON; DEPUTY CRAIG                   )
   BERNARDI; DEPUTY MICHAEL GRANT;                 )
20 DEPUTY JEANETTE HOLUM; DEPUTY                   )
   ROBERT PAGE; DEPUTY CHRISTINE DE                )
21 LOS SANTOS; CITY OF WILLITS, a public           )
22 entity; WILLITS POLICE CHIEF GERARDO            )
   GONZALEZ; WILLITS POLICE OFFICER                )
23 JEFF ANDRADE; WILLITS POLICE                    )
   OFFICER KEVIN LEEF; CALIFORNIA                  )
24 FORENSIC MEDICAL GROUP,                         )
   INCORPORATED, a California corporation;         )
25 CORRECTIONAL MEDICAL GROUP                      )
26 COMPANIES, INCORPORATED, a Delaware             )
   Corporation; TAYLOR FITHIAN, M.D.;              )
27 ELAINE HUSTEDT; CLAIRE TESKE, R.N.;             )

28
   No. 1:15-cv-03226-RS: DECLARATION OF TODD WILCOX,MD, MBA,FACCP

1  JENNIFER L. CAUDILLO, L.V.N., and     )
2  COUNTY DEPUTIES DOES 9–20, and DOES   )
   23–35, individually, jointly, and severally,   )
3                                        )
                    Defendants.          )
4                                        )
                                         )
5  _____)

6

7  STATE OF UTAH          )
                          )
8  COUNTY OF SALT LAKE  )

9

10      1.      Attached hereto as **Exhibit A** is a true and correct copy of my complete Fed. Rule

11          Civ. Proc. 26 expert witness report in this matter.

12      2.      I have personal knowledge of the facts stated in this declaration and my report.  If

13          called upon to testify to same, I am competent to do so.

14      I declare under penalty of perjury pursuant to the laws of the United States and the State of

15  California that the foregoing information is true and correct.

16

17  Dated:  7/3/18                              By: _____

18                                                   TODD WILCOX, MD, MBA,FACCP

19

20

21

22

23

24

25

26

27

28
No. 1:15-cv-03226-RS: DECLARATION OF TODD WILCOX,MD, MBA,FACCP

# EXHIBIT A



November 30, 2017

Julia Sherwin
Haddad and Sherwin
505 Seventeenth Street
Oakland, CA  94612

RE:     Neuroth v. Mendocino County et al.

Dear Ms. Sherwin,

The following is my written report in the case referenced above.  My opinion is based on
my 22 years of experience in the design, administration, and delivery of correctional
healthcare in various environments as well as the national standards that govern the field.
I actively practice in correctional healthcare as the Medical Director of the Salt Lake
County Jail System and I am frequently called upon as a consultant to assist facilities
nationally in improving their delivery of care.  I am one of a select group of individuals to
have achieved both of the advanced levels of certification in correctional healthcare
(CCHP-A and CCHP-P) from the National Commission on Correctional Health Care and
I frequently present to national audiences on pertinent topics in this field of medicine.  In
addition, I am currently the Past-President of the American College of Correctional
Physicians and I am a Fellow of that organization.

In developing my opinions I have relied on the following publications:

1.  The Standards for Health Services in Jails published by the National Commission
    on Correctional Health Care.

4760 HIGHLAND DRIVE, #105                    SALT LAKE CITY, UT  84117
385-743-1744                                 TRWILCOX@WELLCON.NET

In formulating my opinions I also relied upon the following documents:

1. Complaint
2. Mendocino County Jail Mental Health Services Policy.CMGC 622-625
3. Neuroth Records CFMG Mendocino County Jail Medical 2013 & 2014
4. Expert Report Michael Baden
5. Expert Report Denise Panosky
6. Expert Report of Richard Hayward
7. Expert Report of Michael Freeman
8. Audio-video recording of incident
9. Autopsy report
10. Depositions of
    a. Raymond Herr
    b. Elaine Hustedt
    c. Craig Bernardi
    d. Christine De Los Santos
    e. Michael Grant
    f. Jeannette Holom
    g. Lorrie Knapp
    h. Kevin Leef
    i. Frank Masterson
    j. Robert Page
    k. Timothy Pearce
    l. Taylor Fithian
    m. Claire Teske
    n. Jennifer Caudillo
    o. Jeff Andrade

**Timeline of Case**

- On June 10, 2014, at 2203 Mr. Neuroth was arrested by Officer Leef and Officer Andrade of the Willits Police Department. The officers who arrested him had previously encountered Mr. Neuroth at 2008 on the same day.

- On June 10, 2014 the officers who arrested Mr. Neuroth engaged in a discussion regarding disposition about this patient. That discussion revolved around the choice of taking the patient to the hospital or to the jail. The discussion indicated that the officers preferred the jail because they would have to wait with the patient at the hospital.

- On June 10, 2014, at 2336, Mr. Neuroth was evaluated by officer Leef using the Jail Medical Booking Screening Form.

- On June 10, 2014, at 2340, a Sobering/Safety Cell/Restraints Log was completed. A nursing assessment was also completed by Ms. Caudillo, LVN. Vital signs were recorded as blood pressure 150/92, pulse 129, respirations 18 and the designation of " awake" is checked. No temperature or a pulse oximetry reading was documented. There is no indication that Ms. Caudillo reported the abnormal vital signs to a nurse or a physician.

- On June 10, 2014 at an unspecified time, a CFMG progress note was completed by Ms. Caudillo, LVN.. The note indicates that the patient became combative with the custody staff and was taken to ground by custody with shackles placed on his legs and then carried into the safety cell. During this time, the patient made a statement of suicidality while also repeatedly begging custody staff not to hurt or kill him and informing staff he could not breathe and was dizzy. The patient became unresponsive while being restrained in a prone position. Staff then exited the safety cell and left the patient alone for approximately five minutes.

- On June 10, 2014 at 0000 Ms. Caudillo completed an on-site emergency response record. (Given the sequence of events, I believe the accurate date for this record would actually be June 11, 2014.) In this note she indicates that the inmate was found unresponsive and not breathing. Staff were unable to palpate a radial or a carotid pulse. 911 was called and CPR was initiated at 0002 on presumably June 11, 2014.

- On June 11, 2014, a California EMS report was completed that indicates that the the ambulance departed the scene at 0030 and arrived at the hospital in 0035.

- On June 11, 2014, at 0045 Mr. Neuroth was pronounced dead.

**Statement of Opinions**

1. This was a preventable death. Officers Leef and Andrade should have taken the patient directly to the hospital. Had that occurred, he would have received an appropriate assessment by a licensed medical provider as well as appropriate treatment for his condition. Instead, the officers chose to take him to the Mendocino County Jail which was ill-equipped to handle a patient of his complexity. As a result, he was not seen by a qualified healthcare professional and he received no care for his underlying conditions. Their decision to take him

to jail instead of the hospital was based on their own convenience as opposed to what was in the best interest of the patient.

2. Appropriate treatment for Mr. Neuroth would have been readily available at the hospital. The medications necessary to treat him are routine, easily available, and they are predictably effective. Appropriate management and treatment of his presenting condition would have obviated the need for law enforcement subdual which was ultimately the cause of his death.

3. The Mendocino County Jail was not equipped to handle a patient of his complexity. At the time that he was brought to the jail, he should have been immediately transferred to the emergency department. Had that occurred, he would have received an assessment by a qualified healthcare professional, he would have been maintained in an appropriate milieu, he would have received appropriate medical treatment for his condition, and the patient would this still be alive today.

4. The licensed vocational nurse who was on duty at the Mendocino County Jail grossly exceeded the scope of her practice in attempting to assess and manage this patient. She bears individual responsibility for not adhering to the limits of her scope of practice.

5. The licensed vocational nurse did not complete a full set of vital signs in this patient. It is critical when assessing patients to obtain all five vital signs: blood pressure, pulse, respirations, temperature, and pulse oximetry reading. Failure to do so was a violation of the standard of care for nurses.

6. Two of the vital signs obtained by the licensed vocational nurse were abnormal: elevated blood pressure and significantly elevated heart rate. It is likely that his temperature was increased as well, which would have informed the decision about keeping him had it been obtained. The licensed vocational nurse should have called her supervising nurse or the physician to review the case and the abnormal vital signs. There is no evidence that this was done which is a violation of the standard of care.

7. The California Forensic Medical Group and Correctional Medical Group Companies also bear responsibility for this LVN practicing outside of her scope of practice because they created a corporate staffing plan that forced her to do so. Licensed vocational nurses are not allowed to practice independently and by having her as the only health care personnel on shift within the Mendocino County Jail on a regular basis, she was practicing unsupervised and independently on a routine basis.

I arrived at the opinions and conclusions expressed above based on a reasonable degree
of medical certainty.  I reserve the right to update or change my opinions if additional
information becomes available.

Respectfully submitted,

Todd R. Wilcox, MD, MBA, FACCP
Medical Director
Salt Lake County Jail System

# Todd Randall Wilcox, MD, MBA, FACCP

| | |
|---|---|
| ADDRESS: | 4760 S. Highland Drive, # 105<br>Salt Lake City, UT  84117<br>(385) 743-1744 |
| EMPLOYMENT: | **Chief Executive Officer**, Wellcon, Inc.<br>May 1996 to present |
| | **Medical Director**, Salt Lake County Jail System<br>May 1996 to present |
| | **Attending Physician**, After Hours Medical<br>August 2001 to present |
| | **Senior Consultant**, Phase 2 Consulting<br>January 2003 to December 2009 |
| | **Medical Director**, Maricopa County Jail System<br>November 2004 to February 2006 |
| | **Attending Physician,** Wasatch Physician Services<br>July 1996 to January 2000 |
| | **Attending Physician**, State of Utah Department of Corrections<br>August 1997 to January 1999 |
| | **Staff Physician**, Salt Lake County Jail<br>June 1994 to May 1996 |
| EDUCATION: | M. B. A.<br>**University of Utah David Eccles School of Business**<br>    Salt Lake City, UT<br>    September 1996 to June 1998 |
| | Residency in Orthopaedic Surgery<br>**University of Utah**<br>    July 1993 to July 1996 |

Internship in General Surgery
**University of Utah**
    July 1992 to June 1993

M.D.
**Vanderbilt University School of Medicine**
    Nashville, TN
    August 1988 to May 1992

B.S.
**Duke University**
    Durham, NC
    Major:  Biological Psychology
    August 1984 to May 1988

MEDICAL
LICENSURE:    Utah
    Arizona

BOARD
CERTIFICATIONS:  American Board of Urgent Care Medicine—certification by exam 2006, recertified by exam 2014

ADVANCED
CERTIFICATIONS:  Fellow, American College of Correctional Physicians--2015
American Academy of HIV Medicine—2009, 2013 recertified by exam
Advanced Certified Correctional Health Care Provider (CCHP-A)—certification by exam 2007, recertified 2015
Advanced Certified Correctional Health Care Physician (CCHP-P)—certification by exam 2015
Buprenorphine certified--2013

FACULTY
APPOINTMENTS:  Medical School Admissions Committee, University of Utah School of Medicine
Faculty Instructor, Correctional Crisis Intervention Team Academy, Salt Lake County, UT
Adjunct Instructor of Medicine, University of Utah School of Medicine
Adjunct Professor of Chemistry, Salt Lake Community College
Faculty Instructor, University of Utah School of Nursing

PROFESSIONAL

APPOINTMENTS:   Past-President, American College of Correctional Physicians, 2017-present
President, American College of Correctional Physicians, 2015-2017
Chairman, Physician Certification Committee, National Commission on Correctional Health Care, 2012-2013
Board of Directors, National Commission on Correctional Health Care—Certified Correctional Healthcare Professional Board
Chairman, Electronic Medical Records Taskforce for the National Commission on Correctional Healthcare, 2002
Treasurer, Society of Correctional Physicians, 2012
Medical School Admissions Committee, University of Utah School of Medicine, 2012-13

HONORS:   Medical Director for National Commission on Correctional Healthcare Facility of the Year, 2001
Angier B. Duke Memorial Scholarship
Boettcher Foundation Scholar
Jostens Foundation Scholar

PROFESSIONAL
MEMBERSHIPS:   American Medical Association
American College of Emergency Physicians
American Jail Association
Society of Correctional Physicians
American Correctional Health Services Association
American Academy of Urgent Care Medicine
American Academy of HIV Medicine

CORRECTIONAL
CONSULTING:   American Jail Association
National Institute of Corrections
California Department of Corrections
Maricopa County Correctional Health Care, AZ
Pima County Department of Institutional Health, Tucson, AZ
Santa Clara County Jail System, CA
Washington County Jail, UT
Utah County Jail, UT
Seattle-King County Jail System, WA
Mississippi Department of Corrections
National Commission on Correctional Healthcare

PUBLICATIONS:    Wilcox, TR.  President's Column.  *Corrdocs*.  Chicago:  American College of Correctional Physicians, Spring 2016.  19:1, 2.

Wilcox, TR.  How I Practice:  Assessing Weight Loss in Correctional Facilities.  *Corrdocs*.  Chicago:  American College of Correctional Physicians, Spring 2016.  19:1, 8.

Wilcox, TR.  Poising the College for Continued Success.  *Corrdocs*.  Chicago:  American College of Correctional Physicians, Winter 2015.  18:4, 4.

Wilcox, TR.  How I Practice:  Managing Diabetics on Commissary Day.  *Corrdocs*.  Chicago:  American College of Correctional Physicians, Winter 2015.  18:4, 9.

Wilcox, TR.  Dealing with Orthopedic Hardware.  *Corrdocs*.  Chicago:  Society of Correctional Physicians, Fall 2014.  17:3, 4-5.

Wilcox TR.  Critical Commandments in Correctional Health Care:  Part 3.  *CorrectCare*.  Chicago:  National Commission on Correctional Health Care, Fall 2013.  27:4, 16.

Wilcox TR.  Critical Commandments in Correctional Health Care:  Part 2.  *CorrectCare*.  Chicago:  National Commission on Correctional Health Care, Summer 2013.  27:3, 19.

Wilcox TR.  Critical Commandments in Correctional Health Care:  Part 1.  *CorrectCare*.  Chicago:  National Commission on Correctional Health Care, Spring 2013.  27:2, 20.

Wilcox TR.  Developing an Effective Alcohol Withdrawal Protocol.  *Correctional Health Care Report*.  Civic Research Institute, Inc., May 2003:  49-50, 63-64.

Goble EM, Kane SM, Wilcox TR, Doucette SA.  Meniscal Allografts.  In:  McGinty JB, ed. *Operative Arthroscopy*.  Philadelphia:  Lippincott-Raven Press; 1996:  317-31.

Goble EM, Kane SM, Wilcox TR, Olsen RE.  Advanced Arthroscopic Instrumentation.  In:  McGinty JB, ed.  *Operative Arthroscopy*.  Philadelphia:  Lippincott-Raven Press; 1996:  7-12.

Wilcox TR, Goble EM.  Indications for meniscal allograft reconstruction.  *American J of Knee Surgery* 9:  35-6, 1996.

<u>Wilcox TR</u>, Goble EM, Doucette SA.  Goble technique of meniscus transplantation.  *American J of Knee Surgery* 9:  37-42, 1996.

Goble EM, Downey DJ, <u>Wilcox TR</u>.  Positioning of the tibial tunnel for ACL reconstruction.  *J Arthroscopy*  12:  415-18, 1995.

Morris JA, <u>Wilcox TR</u>, Reed GW, et al.  Safety of the blood supply:  surrogate testing and transmission of hepatitis C in patients after massive transfusion.  *Annals of Surgery* 219:  517-26, 1994.

<u>Wilcox TR</u>, Morris JA, Green NE.  Case report:  Pediatric ankle fractures.  *Tennessee Medical Journal*.  85:  217-19, 1992.

Morris JA, <u>Wilcox TR</u>, Frist WH.  Pediatric organ donation:  the paradox of organ shortage despite the remarkable willingness of families to donate.  *Pediatrics*  89:  411-15, 1992.

Morris JA, <u>Wilcox TR</u>, Noreuil T, and Frist WH.  Organ donation:  a university hospital experience.  *Southern Medical Journal* 83:  884-88, 1990.

Cogbill TH, Moore EE, Feliciano DV, <u>Wilcox TR</u>, et al.  Conservative management of duodenal trauma:  a multicenter perspective.  *Journal of Trauma*  30:  1469-75, 1990.

Morris JA, Moore EE, Feliciano DV, <u>Wilcox TR</u>, et al.  Post-traumatic renal failure:  a multicenter study.  *Journal of Trauma* 31:  1584-90, 1991.

<u>Wilcox TR</u>, contributing author to <u>The Admissions Essay</u> by Helen W. Power and Robert DiAntonio.  Lyle Stuart, Inc., Seacausus, NJ, 1987, pp. 116-7, 197, 206-8, 219-20.

PRESENTATIONS:   National Commission on Correctional Healthcare Jail Standards Course
Abdominal Pain
Chronic Disease Management in Correctional Facilities
Pain Management in Correctional Healthcare
Alcohol Withdrawal Syndrome
Drug Withdrawal Syndromes
Effective Correctional Medical / Mental Health Intake Screening
Endocrine Emergencies
Excited Delirium and Sudden In-Custody Death Syndrome

Hematologic Emergencies
Safe Restraint and Intensive Medical Management Practices
Medical Effects of Mental Health Medications
Neurological Emergencies
Effective Nursing Triage in Correctional Settings
Orthopedic Emergencies
Point of Care Laboratory in Correctional Healthcare
Managing Hypertension in Correctional Healthcare
Seizure Assessment and Treatment
How To Work Well with EMS
Effective Wound Care Practices in Correctional Healthcare
14-day Assessments in Corrections
Electronic Health Records for Institutional Medicine

EXPERT
PANELS:

Rand Corporation Expert for Modified Delphi Process to
Determine Quality Measures for Correctional Healthcare—June
2009

American Jail Association / National Institute of Corrections
Expert for Mental Health in Jails Focus Group and National
Satellite Broadcast—June 2009

PATENTS:

United States Patent 5,681,289
Chemical Dispensing System
Issued October 28, 1997

United States Patent 5,891,101
Chemical Dispensing System Methodology
Issued April 17, 1999

United States Patent 5,895,375
Chemical Dispensing System Components
Issued April 17, 1999

Expert Testimony List
Todd R. Wilcox, MD, MBA, CCHP-A

| Case | Date | Location | Topic | Role |
|------|------|----------|-------|------|
| Marcum vs. Scioto County | 2013 | OH | Status Asthmaticus | Defense Expert |
| Galambos vs. Cumberland | 2013 | ME | Psychosis / PE | Defense Expert |
| Siple vs. Columbia County | 2013 | GA | Hypertension | Defense Expert |
| Baires vs. USA | 2013 | CA | HIV | Defense Expert |
| Bornstein vs. Monmouth County | 2014 | NJ | Excited delirium | Defense Expert |
| Parsons vs. Ryan | 2014 | AZ | Medical Care System | Plaintiff Expert |
| Atencio vs. Arpaio | 2014 | AZ | Mental Health use of force | Plaintiff Expert |
| Hamilton vs. Lawrence County | 2014 | PA | Suicide | Defense Expert |
| Lauhoff vs. QCHC | 2015-16 | AL | Anemia | Defense Expert |
| Garner v. Corizon | 2016 | AZ | Dehydration | Plaintiff Expert |
| Parenti v. CFMG | 2017 | CA | Respiratory failure | Plaintiff Expert |



**Fee Schedule**
**2017**

| | | |
|---|---|---|
| Review of records | | $450 per hour |
| Depositions in Salt Lake | 4 Hour Minimum | $700 per hour |
| Court appearances in Salt Lake | 4 Hour Minimum | $700 per hour |
| Depositions outside Salt Lake | One Day Minimum | $5600 per day |
| Court appearances outside SLC | One Day Minimum | $5600 per day |

Retainer
    $3000 engagement retainer for new attorneys, firms, or groups

Travel Expenses

    Travel time is one-third the hourly rate billed door-to-door. All airfare, hotels, car rental, food, and other travel expenses will be billed at cost with receipts. Flights over 2 hours are booked first class, hotels are business class. Depositions and court appearances must be paid in advance to confirm a date.